**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LNV CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 09-2471-JAR** |
| **v.** | ) | **Lead Case** |
| | ) | |
| **MARK E. CURRY and** | ) | |
| **WILLIAM J. DUGAN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |
| | ) | |
| **MARK E. CURRY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-2522-JAR** |
| **LNV CORPORATION and** | ) | |
| **CLMG CORPORATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

<u>**MEMORANDUM AND ORDER**</u>

LNV Corporation filed an action in federal district court against Mark Curry ("Curry" or "plaintiff") and William Dugan ("Dugan"), seeking to enforce various guaranty agreements signed by Curry and Dugan.[1] Curry subsequently filed a separate action against LNV Corporation ("LNV"), David Chortek ("Chortek"), and CLMG Corporation ("CLMG") in the District Court of Johnson County, Kansas, alleging (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), (2) negligent misrepresentation, (3) violation of the implied duty of

_____

[1] *See LNV Corp. v. Curry et al.*, Case No. 09-2471-JAR.

good faith and fair dealing, (4) discharge, and (5) mistake.[2]  Defendants LNV, Chortek and

CLMG removed the action to this Court, and filed a Motion to Dismiss (Doc. 5) Curry's First

Amended Petition for failure to state a claim upon which relief may be granted under Federal

Rule of Civil Procedure 12(b)(6), and for an award of attorneys' fees pursuant to 15 U.S.C. §

1692k(a)(3) and the terms of the agreements.  Both cases were stayed pending resolution of the

motion to dismiss, and the two actions were consolidated.

        This matter is now before this Court on defendants' LNV and CLMG motion to dismiss.

Plaintiff Curry has voluntarily stipulated to the dismissal of Count I, the FDCPA claim, and to

the dismissal of defendant Chortek.[3]  For the reasons stated in detail below, defendants' motion

is denied with respect to Curry's claim of negligent misrepresentation, and granted with respect

to his remaining claims.

## I.      Rule 12(b)(6) Standards

        In ruling on a Rule 12(b)(6) motion to dismiss, the court will draw all reasonable

inferences in favor of the plaintiff.[4]  Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests.[5]  To survive a motion to dismiss, a complaint must present factual allegations, assumed to

---

        [2]*See Curry v. LNV Corp. et al.*, Case No. 09-2522-KHV.

        [3](Doc. 7.)

        [4]*Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

        [5]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47
(1957)).  The United States Supreme Court explained in *Bell Atlantic Corp. v. Twombly*: "Without some factual
allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair
notice' of the nature of the claim, but also 'grounds' on which the claim rests."  550 U.S. 544, 555 n.3 (2007).

be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[6]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly* seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[7] The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[9] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[10] "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] "Rule 12(b)(6) is a proper vehicle for

---

[6]*Twombly*, 550 U.S. at 555, 570.

[7]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[8]*Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949–50 (2009).

[9]*Id.* at 1950.

[10]*Id.*

[11]*Id.* at 1949 (citation omitted).

[12]*Id.*

dismissing a complaint that, on its face, indicates the existence of an affirmative defense."[13]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[14] In so doing, however, the court may consider documents attached to the complaint, such as a contract, without converting the motion into one for summary judgment.[15] Plaintiff Curry attached to his Petition a copy of two promissory notes, two commercial security agreements, and two commercial guaranty agreements.[16] The Court considers these documents, as they are central to plaintiff Curry's claims. The Court declines to consider Brian McGowan's affidavit, as it merely recites the facts set forth in plaintiff's Petition.[17] Finally, the Court does not consider the letter from CLMG, as it is not relevant to the present motion.[18]

## II.    Plaintiff Curry's First Amended Petition

The following facts and claims are taken from plaintiff Curry's First Amended Petition and the documents attached thereto as exhibits. In September 2007, and February 2008, Columbian Bank and Trust Company ("Columbian") made a loan to MPC Ventures, LLC

---

[13]*Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 n.3 (10th Cir. 1999), abrogated on other grounds by *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

[14]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[15]*See* Fed. R. Civ. P. 10(c); *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008).

[16](Doc. 1). Documents relating to MPC Ventures, LLC's loan are under Exhibit A; documents relating to Geneva Roth Ventures, Inc.'s loan are under Exhibit B.

[17](Doc. 1 at 56, Ex. C); *see Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) (noting a split among circuits on whether a court may consider an affidavit attached to the complaint in ruling on a Rule 12(b)(6) motion, and deciding that a *Martinez* report may be considered on a 12(b)(6) motion even though it is often considered an affidavit).

[18](Doc. 1 at 59, Ex. D.)

("MPC") and Geneva Roth Ventures, Inc. ("GRV"), as evidenced by promissory notes and secured by commercial security agreements and commercial guaranties.[19] Plaintiff Curry executed the MPC note and the GRV note and the commercial security agreements as a representative of each respective corporate entity.[20] Plaintiff Curry executed the commercial guaranties as an individual, agreeing to guaranty the obligations under both promissory notes.[21]

Prior to signing either of these guaranties, Curry had various communications with Columbian. Curry primarily consulted with Vice President Brian McGowan, who represented to Curry that the underlying obligations were lines of credit, which would be continually renewed upon request. Based on these discussions, Curry thought that the underlying lines of credit would be continually renewed upon request, and he did not think the underlying lines of credit would be called at the end of their fixed term.

Columbian was subsequently taken over by the Federal Deposit Insurance Corporation ("FDIC") and the lines of credit were assumed by LNV on or about August 22, 2008. Various payments were made by the principal borrowers on the lines of credit between August 22, 2008 and approximately April 2009. Curry received a letter dated October 2, 2009, from CLMG notifying him that servicing of one of the lines of credit had been transferred to CLMG and requesting that Curry provide specific information on collateral securing this line of credit.

At various times between approximately February 2, 2009 and May 2009, Curry, both individually and by and through general counsel for the principal borrowers, attempted to

---

[19](Doc. 1, Ex. A and B.)

[20]*Id.*

[21]*Id.*

communicate with defendants concerning the lines of credit. Chortek, an officer of LNV, contacted Curry in an attempt to collect payment. Curry made repeated attempts to resolve the disputed lines of credit, including suggesting entering into a payment plan, which defendants agreed to prepare. Defendants represented that they would send a proposed payment plan, but Curry never received any such promised plan. Instead, defendants sent a demand letter for payment in full on August 3, 2009.

### Count II—Negligent Misrepresentation

Curry claims that, at the time he agreed to guaranty the lines of credit, Columbian, through McGowan, represented to Curry that the lines of credit of each company were not intended as fixed term loans, and therefore would be renewed upon request on or before all maturity dates as long as the named borrower remained solvent and in continued communication with Columbian. McGowan further represented to Curry that the lines of credit would not be in default unless the named borrowers ceased to exist without any option for resolution of the obligations owed under the lines of credit.

Defendants did not give the named borrowers the option of renewal, but instead sought payment of each line of credit in its entirety. As a result, defendants allege that Curry is liable as a guarantor of the entire amount of each line of credit. Defendants failed to uphold the original terms of the obligation and to exercise reasonable care or competence in obtaining or communicating all of the applicable terms of the obligation. Curry relied on the promise from Columbian, and defendants negligently misrepresented the terms of the obligation by demanding full payment. Curry seeks rescission of the guaranty of the lines of credit.

### Count III—Violation of Duty of Good Faith and Fair Dealing

6

In approximately May 2009, defendants communicated to Curry that they would draft and send a payment plan for the "disputed obligations." Curry states that he was ready, willing and able to comply with the aforementioned payment plan, or in the alternative, ready, willing, and able to continue making various payments to the lines of credit as had been happening since the obligation was undertaken. In demanding payment of the notes in their entirety, defendants acted in the absence of good faith, because defendants had represented to Curry that they were going to prepare a payment plan. Without any further communication, over two months later, defendants made a demand in writing for full payment. Defendants harassed Curry to pay the purported debts, then misrepresented their intention to enter into a payment plan as a scheme to delay any further communications with Curry until after the purported obligations were in default. The intentional and purposeful acts of defendants prevented Curry from carrying out the obligations under the lines of credit, and the acts destroyed or injured the right of Curry to receive the rights under the lines of credit.

Curry states that there is a controversy between Curry and defendants as to the obligation owed on the lines of credit, and in the event such obligation is owed, there is a controversy as to (a) persons liable under such obligation, (b) the payment of interest or default interest and the calculation thereof, and (c) the cost of collection. Curry requests a judicial determination and declaration of rights and obligations of the parties, and a declaration that Curry is not liable as guarantor on the underlying obligation.

### Count IV—Discharge

The terms of the lines of credit included a renewal upon request, and the ability to renew upon request was a material term to the lines of credit. Absent that term, Curry states that he would not have agreed to the lines of credit. Curry never consented to alter or terminate the ability to renew upon request and such actions constitute a material alteration of the terms of the primary obligation. Curry claims that he is discharged of any obligation under the lines of credit and is entitled to rescission of the guaranty.

### Count V—Mistake

At the time the guaranty agreements for the lines of credit were executed, Curry and Columbian, through McGowan, agreed that the lines of credit were not intended as fixed term loans, and therefore would be renewed upon request on or before all maturity dates as long as the named borrower remained solvent. The guaranty does not reflect this agreement regarding renewals. Defendants did not give the borrowers under the lines of credit an option of renewal, but instead sought payment of each line of credit in its entirety. Since the guaranty did not incorporate the true prior intentions of Curry and Columbian, a mutual mistake occurred. As a result of this "mutual mistake," Curry requests the guaranty be reformed to reflect the agreement between Curry and Columbian that the lines of credit be renewed upon request on or before all maturity dates.

## III.    Discussion

Defendants argue that Curry's claims for negligent misrepresentation, violation of the implied duty of good faith and fair dealing, discharge, and mistake all fail to state a claim upon which relief can be granted for three reasons: (1) Curry's claims are based on an oral credit

agreement that violates the Kansas Credit Agreement Act ("KCAA"), (2) the oral representations are barred by the parole evidence rule, and (3) Curry has not alleged facts demonstrating one or more elements of each claim. The Court first addresses the application of the KCAA to Curry's claims.

### A. Kansas Credit Agreement Act

Defendants argue that because Curry's claims are based on oral representations that preceded or followed the written credit agreements, the claims are barred by the KCAA. Curry responds that he is filing the action on his own behalf, and is disputing liability on the "*personal guaranty agreements.*"[22] He further notes that guaranty agreements are specifically excluded from the KCAA. The parties dispute whether the oral representations between Curry and Columbian were part of the guaranty agreements signed by Curry or were oral credit agreements falling within the prohibition of the KCAA.

The KCAA serves as a statute of frauds for "credit agreements,"[23] which are specifically defined as agreements "by a financial institution to lend or delay repayment of money, goods or things in action, to otherwise extend credit or to make any other financial accommodation."[24] "Credit Agreement" specifically excludes "[o]pen-end or closed-end promissory notes, . . . [and] guaranty agreements . . ."[25] A "creditor" means "a financial institution which extends credit or extends a financial accommodation under a credit agreement with a debtor,"[26] and "debtor"

---

[22](Doc. 12 at 4) (emphasis in original).

[23]*Wells v. State Bank of Kingman*, 945 P.2d 418, 419 (Kan. Ct. App. 1997).

[24]K.S.A. § 16-117(a).

[25]*Id.*

[26]*Id.* § 16-117(b).

means "a person who obtains credit or receives a financial accommodation under a credit agreement with a financial institution."[27]

The operative provision of the statute, K.S.A. § 16-118(a), provides:

> A **debtor** or a **creditor** may not maintain an action for legal or equitable relief or a defense, based in either case upon a failure to perform on an alleged **credit agreement**, unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor.[28]

The statue was enacted "in an attempt to limit 'lender liability' claims based on alleged oral agreements between borrowers and financial institutions."[29] The intent of the legislation was "to insure there is written evidence of credit agreements and to prevent lawsuits based on disputed oral agreements to lend money or the disputed terms for lending the money."[30]

Defendants cite as support *Bittel v. Farm Credit Services of Central Kansas*,[31] which arose from oral representations by a lender to a borrower regarding whether a loan would be renewed. The oral representations in *Bittel* were similar to those in the present case, but the parties were different. Here, a guarantor rather than a borrower has brought an action on the basis of a lender's oral representations. Neither party has discussed whether a guarantor comes within the definition of a "debtor" under the Act. While the Act expressly excludes "guaranty agreement" from its coverage, the definition of "debtor" also appears narrow enough to exclude

---

[27]*Id.* § 16-117(c).

[28]*Id.* § 16-118(a) (emphasis added).

[29]*Wells v. State Bank of Kingman*, 945 P.2d 418, 419 (Kan. Ct. App. 1997).

[30]*Bittel v. Farm Credit Servs. of Cent. Kan.*, 962 P.2d 491, 496 (Kan. 1998) (quoting Supplemental Note on S.B. 535).

[31]962 P.2d 491 (Kan. 1998).

guarantors from its scope.[32]  Moreover, although Curry's claims invoke allegations that

defendants refused to honor their oral representations regarding renewal of the lines of credit,

Curry does not seek to enforce or defend those obligations, but rather, to rescind or reform his

obligations as a guarantor of those obligations.  Thus, the Court finds that the KCAA does not

apply and denies defendants' motion to dismiss on this basis.  The Court next turns to

defendants' alternative arguments for dismissal.

### B.    Negligent Misrepresentation

Defendants argue that Curry's allegations fail to state a claim for negligent

misrepresentation because (1) Curry has not alleged a material misrepresentation of an existing

fact, and (2) Curry has not alleged "reasonable" reliance.  Curry argues that commercial facts

were misrepresented to him when McGowan incorrectly represented the contractual conditions

for renewal of the lines of credit at the time Curry signed the guaranty agreements.

In *Mahler v. Keenan Real Estate, Inc.*,[33] the Kansas Supreme Court adopted the tort of

negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552 (1976).[34]  A

negligent misrepresentation claim may be brought against a person "who, in the course of his

business, profession or employment, or in any other transaction in which he ha[d] a pecuniary

---

[32]The definition of "debtor" adopted in other states is broader.  *Compare* K.S.A. § 16-117(c) *with* 815 Ill. Comp. Stat. 160/1(3), Colo. Rev. Stat. § 38-10-124(1)(c), *and* Minn. Stat. § 513.33 Subdivision 1(3).  Courts have held that other states' statute of frauds for credit agreements are broad enough to cover actions between lenders and guarantors, or third parties other than borrowers, seeking to enforce a credit agreement.  *See, e.g.*, *Bank Cherokee v. Insignia Dev., LLC*, 779 N.W.2d 896 (Minn. Ct. App. 2010); *Schoen v. Morris*, 15 P.3d 1094 (Colo. 2000); *Bank One, Springfield v. Roscetti*, 723 N.E.2d 755 (Ill. App. Ct. 1999).  *But see Thomas & Wong Gen.Contractor v. The Lake Bank, N.A.*, 553 F.3d 650 (8th Cir. 2009) (noting that Minnesota's credit-agreement statute of frauds only applied if the suit was between a "debtor" and a "creditor" with regard to a "credit agreement" as defined by statute, but holding that appellant was not a "debtor," thus the statute did not apply).

[33]876 P.2d 609 (Kan. 1994).

[34]*Id.* at 616.

interest, supplie[d] false information for the guidance of others in their business transactions."[35] The misrepresentation must be one of "factual, commercial information and not [] statements of future intent."[36] If Curry's reliance upon that commercial information was justifiable, then a defendant is liable for the pecuniary loss caused by defendant's failure to exercise reasonable care or competence in obtaining or communicating the information.[37] "[T]he question of whether the alleged misrepresentations were of ones of present fact or ones of opinion or future intent is clearly a question of law."[38]

Curry alleges that at the time he agreed to guaranty the lines of credit, McGowan represented that the lines of credit were not intended as fixed term loans and would be renewed on or before all maturity dates as long as the named borrower (1) made a request, (2) remained solvent, and (3) remained in continued communication with Columbian. McGowan also represented that the lines of credit would not be in default unless the named borrowers ceased to exist without any option for resolution of the obligations owed under the lines of credit.

Again, defendants rely upon *Bittel* to argue that McGowan's representation was not a statement of past or present fact, but an agreement to perform in the future. In *Bittel*, the Kansas Supreme Court found that an oral promise to renew a loan in the future was not an affirmative statement of fact, but an intent to perform in the future, which did not support a negligent

---

[35]*Id.*

[36]*Phillips v. Tyler*, 129 P.3d 656, 658 (Kan. Ct. App. 2006) (citing *Bittel v. Farm Credit Servs. of Cent. Kan.*, 962 P.2d 491 (Kan. 1998)).

[37]*Mahler*, 876 P.2d at 616 (quoting Restatement (Second) of Torts § 552 (1976)).

[38]*Bittel*, 962 P.2d at 501.

misrepresentation claim.[39]  The Court noted that, although defendant made the oral promise to renew, the written loan agreement included specific conditions for renewal, thus, the defendant's oral promise to extend future financing was "clearly conditional upon future compliance with loan requirements, which [cannot] be ascertained at the time the statements were made."[40] Statements "of opinion and not of fact," which are "far from an unequivocal promise to renew the credit agreement," cannot support a negligent misrepresentation claim.[41]

Here, Curry alleges that McGowan's discussion of the terms of renewal was a negligent misrepresentation of the contents and terms of the promissory notes that Curry was being asked to guaranty.  Curry argues that *Bittel* can be distinguished because he alleges that defendants misrepresented the written conditions of renewal, rather than misrepresenting a future intent to renew.  Furthermore, these representations did not relate to the terms of the guaranty agreements Curry was asked to sign, but to the promissory notes he was guarantying.  The Court agrees. Taking all inferences in favor of Curry, the Court finds that Curry's Petition states a plausible claim for negligent misrepresentation of a present fact.

Defendants argue in the alternative that Curry cannot maintain a claim for negligent misrepresentation because the alleged representations were directly contrary to the terms of the promissory notes.[42]  While defendants' statement of the law is accurate, this case offers a factual twist—Curry's action is brought in his individual capacity as a guarantor of the promissory

---

[39]*Id*. at 500–01.

[40]*Id.* at 501.

[41]*Id.*

[42]*Flight Concepts Ltd. P'ship v. Boeing Co.*, 38 F.3d 1152, 1156 (10th Cir. 1996) (holding where a written contract directly contradicts the oral promises made during contract negotiations, the oral promise cannot be construed as fraudulent) (citing *Edwards v. Phillips Petroleum Co.*, 360 P.2d 23, 26 (Kan. 1961)).

notes, which he executed as an officer or owner of the named borrowers. Whether Curry's reliance on McGowan's statements about the contents of a separate contract was reasonable cannot be decided on a motion to dismiss and is a question better resolved on a motion for summary judgment when the Court can consider all the facts surrounding Curry's decision to enter into the guaranty agreements.[43]

Curry argues in the alternative that he has also stated a claim for fraudulent misrepresentation.[44] No such claim is set forth in the Petition, however, and Curry does not seek leave to amend. In a claim for fraudulent misrepresentation, plaintiff must allege that defendant knew the statement was untrue or was reckless as to whether the statement was true or untrue.[45] Fraudulent misrepresentation under Kansas law is defined as follows:

> Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his or her injury and damage.[46]

Under Fed. R. Civ. P. 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Nevertheless, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[47] To survive a

---

[43]*See Kelley Metal Trading Co. v. Al-Jon/United, Inc.*, 812 F. Supp. 185, 188 (D. Kan. 1993) (holding that reasonable reliance is an element better addressed on summary judgment).

[44]*See Cox v. Pabst Brewing Co.*, 128 F.2d 468, 471 (10th Cir. 1942) (noting that a plaintiff may bring a fraudulent inducement claim against a defendant who intentionally misrepresented the terms of the contract, even if plaintiff failed to read the contract before signing).

[45]*Wilkinson v. Shoney's, Inc.*, 4 P.3d 1149, 1165 (Kan. 2000).

[46]*Thomas v. Talbott Recovery Sys., Inc.*, 982 F. Supp. 794, 798 (D. Kan. 1997) (quoting *Gerhardt v. Harris*, 934 P.2d 976 (Kan. 1997)); *see also Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004).

[47]Fed. R. Civ. P. 9(b).

motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[48]  In other words, plaintiff must set out the "who, what, where, and when" of the alleged fraud.[49]

Curry has alleged the general dates when these representations were made by McGowan, but has not alleged, even generally, that McGowan's representations were intended to deceive or made with reckless disregard for the truth.  To the extent Curry has not alleged these elements of a fraudulent misrepresentation claim, the Court finds that any putative claim for fraudulent misrepresentation based on the Petition before the Court does not survive the standards of Rule 9(b).

### C.    Violation of Implied Duty of Good Faith and Fair Dealing

Defendants argue that Curry has failed to state a claim under Count III because (1) Curry does not identify the terms of any particular contract breached, and (2) there is no implied duty of good faith and fair dealing to negotiate or re-negotiate a contract.

Kansas courts imply a duty of good faith and fair dealing in almost every contract.[50]  The purpose of the good faith doctrine in contract law is to protect the reasonable expectations of the parties by implying terms in the agreement.[51]  The implied covenant is derivative in nature in that

---

[48]*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

[49]*Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F. Supp. 2d 1153, 1156 (D. Kan. 2007) (quoting *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001)).

[50]*Bonanza, Inc. v. McLean*, 747 P.2d 792, 801 (Kan. 1987) ("However, essential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing.").

[51]*Flight Concepts Ltd. P'ship v. Boeing Co.*, 819 F. Supp. 1535, 1550 (D. Kan. 1993) (citing *Big Horn Coal Co. v. Commonwealth Edison Co.*, 852 F.2d 1259, 1267 (10th Cir. 1988)).

it does not create or supply new contract terms, but it grows out of existing ones.[52]  The covenant

guides the construction of explicit terms in an agreement.

> [I]n order to prevail on an implied duty of good faith and fair
> dealing theory under Kansas law, plaintiffs must (1) plead a cause
> of action for "breach of contract," not a separate cause of action for
> "breach of duty of good faith," and (2) point to a term of the
> contract "which the defendant allegedly violated by failure to
> abide by the good faith spirit of that term."[53]

"The duty of good faith assumes the existence of a contractual right; it does not create one."[54]

"This implied duty requires the parties to an agreement to refrain from 'intentionally and

purposefully do[ing] anything to prevent the other party from carrying out his part of the

agreement, or do[ing] anything which will have the effect of destroying or injuring the right of

the other party to receive the fruits of the contract.'"[55]  The implied duty applies to contract

performance, not contract formation.[56]

Curry alleges that in May 2009, defendants communicated to Curry that they would draft

and send a payment plan for the disputed obligations.  Curry states that he was ready, willing,

and able to comply with the payment plan, or to continue making payments on the lines of credit

as had been done since the obligations were undertaken.  Curry alleges defendants acted in bad

---

[52]*Id.*

[53]*Terra Venture, Inc. v. JDN Real Estate-Overland Park, L.P.*, 340 F. Supp. 2d 1189, 1201 (D. Kan. 2004) (quoting *Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1188 (D. Kan. 2003) (citations omitted)).

[54]*Id.* (quoting *Bank IV Salina, N.A. v. Aetna Cas. & Surety Co.*, 810 F. Supp. 1196, 1204 (D. Kan. 1992) (citation omitted)).

[55]*Id.* (quoting *Kay-Cee Enters., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846 (D. Kan. 1999) (citation omitted)).

[56]*Prof'l Serv. Indus., Inc., v. Kimbrell*, 834 F. Supp. 1305, 1310 (D. Kan. 1993) (citing *Bonanza, Inc. v. McLean*, 747 P.2d 792, 800–01 (Kan. 1987)).

faith when they failed to notify him or disclose that they were no longer willing to enter into a payment plan, and that defendants misrepresented their intention to enter a payment plan as a "scheme to delay any further communications with Plaintiff until after the purported obligations were in default."

Although less than clear, the Petition alleges the payment plan was meant to accommodate payments on the lines of credit. "In order for an agreement to be binding, it must be sufficiently definite as to its terms and requirements as to enable a court to determine what acts are to be performed and when performance is complete."[57] Curry does not allege the material terms of the payment plan, or the specific obligations he claims he was "ready, willing, and able" to perform or identify any provision of a written contract or written payment plan.[58] Thus, there is no contract from which to infer a duty of good faith and fair dealing. Moreover, Curry's allegations relate to conduct that occurred prior to the formation of any contract to extend the obligations under the promissory notes. Kansas law makes clear that the implied duty of good faith and fair dealing applies to the performance of a contract and not to its formation.[59] Nor is there any implied duty to negotiate a contract or its modification.[60]

In his response, Curry attempts to bolster his claim by referring to the conditions of

---

[57]*Lessley v. Hardage*, 727 P.2d 440, 446 (Kan. 1986) (quoting *Hays v. Underwood, Adm'r*, 411 P.2d 717 (1966)).

[58]*See Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1185 (D. Kan. 1990) (noting that "good faith and fair dealing" is not a "free floating code of business conduct," but is intended to "hold[] a party to the expectations and intentions expressed in the agreement").

[59]*Prof"l Serv. Indus., Inc. v. Kimbrell*, 834 F. Supp. 1305, 1310 (D. Kan. 1993).

[60]*Columbian Nat'l Title Ins. v. Twp. Title Servs., Inc.*, 659 F. Supp. 796, 806 (D. Kan. 1987) (rejecting argument that there exists any implied covenant of good faith and fair dealing based on a party's failure to settle a contract dispute or negotiate a termination of a contract).

renewal that McGowan represented were part of the promissory notes.  Curry alleges that the obligations under the guaranty agreements "fell in default only upon Defendants [sic] deceitful acts," and "[i]t was Defendants [sic] untruthful communication concerning the life of the obligation that deprived Curry of the capacity to fulfill the contract."[61]  The Petition alleges, however, that Curry was prevented from carrying out his obligations on the lines of credit.

Review of the distinction between a guaranty agreement and a credit agreement is instructive.  The Kansas Supreme Court has defined the relationship between these contracts as follows:

> A guaranty is a contract between two or more persons, founded upon a consideration, by which one person promises to answer to another for the debt, default or miscarriage of a third person, and, in a legal sense, has relation to some other contract or obligation with reference to which it is a collateral undertaking.  The contract of a guarantor is his own separate contract.  It is in the nature of a warranty by him that the thing guaranteed to be done by the principal shall be done, and is not an engagement jointly with the principal to do the thing.  A guarantor, not being a joint contractor with the principal, is not bound like a surety to do what the principal has contracted to do, but answers only for the consequence of the default of the principal.  The original contract of his principal is not his contract.  When default occurs on the part of the principal, the guarantor's liability becomes primary and is absolute.[62]

Curry has not alleged that the conditions of renewal were a contractual provision in his guaranty agreement, or that failure to renew the promissory notes and/or lines of credit prevented him from performing his obligations under the guaranty agreements.  In fact, Curry does not allege or

---

[61](Doc. 12 at 12.)

[62]*Bomud Co. v. Yockey Oil Co.*, 299 P.2d 72 (Kan. 1956) (internal citations omitted); *see also Iola State Bank v. Biggs*, 662 P.2d 563, 567–68 (Kan. 1983) (noting the difference between renewal of a note and a continuing guaranty).

affirmatively state what implied duty that defendants allegedly breached bound defendants to do with respect to the guaranty agreements. As Curry has repeatedly emphasized, he is bringing this lawsuit in his individual capacity as a guarantor of the lines of credit. Therefore, Curry has not stated a claim upon which relief may be granted, and Count III is appropriately dismissed.

### D.    Discharge and Mistake

In Counts IV and V, Curry attempts to articulate claims for rescission of the guaranty agreements due to discharge of his obligations, and reformation of the agreements on the basis of mutual mistake. Curry alleges that he is discharged of his obligations under the guaranty agreements because "[t]he terms of the Lines of Credit included a renewal upon request," which was a material term to the lines of credit. Without that term in the written agreement, Curry alleges, he would not have agreed to guaranty the lines of credit. Curry states that he never gave consent to alter or terminate the ability to renew upon request, and this was a material alteration of the terms of the primary obligation that he guaranteed.

Curry also claims that a mutual mistake occurred and requests reformation of the guaranty. He alleges that "[a]t the time of the signing of the guaranty for the Lines of Credit, Plaintiff and Columbian, through McGowan, agreed that the Lines of Credit were not intended as fixed term loans, and therefore would be renewed upon request on or before all maturity dates as long as the named borrower remained solvent."[63] Since the guaranty did not incorporate the true prior intentions of Curry and Columbian, Curry alleges a mutual mistake occurred, justifying reformation of the guaranty to include the parties' intentions that the lines of credit be renewed upon request on or before all maturity dates.

---

[63](Doc. 1 at 9).

The general rule under Kansas law is that a guarantor's liability is limited when there has been a material change in the underlying obligation without the guarantor's consent.[64] The general rule does not apply, however, where the guaranty agreement itself permits modification of the underlying obligation.[65] The guaranty agreements state that the lender is authorized to extend or renew the terms of the underlying promissory notes[66] and that the guarantor "waives any right to require the lender (A) to continue lending money or to extend other credit to Borrower."[67] Thus, the terms of the guaranty agreements permit the modification of the underlying indebtedness, including terms of renewal.

Curry defends his claims by arguing that the guaranty agreements are ambiguous with regard to how the promissory notes can be renewed and argues that extrinsic evidence should be considered to clarify those provisions, citing to the following language:

> This Guaranty will continue to bind Guarantor for all the Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modification of the Indebtedness. All renewals, extensions, substitutions, and modification of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness.[68]

---

[64] *See Raytheon Aircraft Credit Corp. v. Pal Air Int'l, Inc.*, 923 F. Supp. 1408, 1413 (D. Kan. 1996) (noting that a guarantor's liability may be limited when there is a material change in the underlying obligation without the guarantor's consent, but not if the guaranty agreement authorizes modification of the underlying obligation); *see also Ryco Packaging Corp. of Kan. v. Chapelle Int'l, Ltd.*, 926 P.2d 669, 677–78 (Kan. Ct. App. 1996); *Beech Acceptance Corp. v. Connell*, Case Nos. 88-1080-C, 88-1575-C, 1990 WL 129448, at *13 (D. Kan. Aug. 21, 1990).

[65] *Raytheon*, 923 F. Supp. At 1413 (citing *Hill Petroleum v. Pathmark Int'l*, 759 F. Supp. 722, 725 (D. Kan. 1991)).

[66] (Doc. 1, Ex. A at 9-10.)

[67] *Id.*, Ex. A at 21; Ex. B at 39.

[68] *Id.*, Ex. A at 20; Ex. B at 38.

Curry alleges that the actual intentions of the parties regarding renewal of the obligation "bear a particular meaning that is not clear from the guaranty, but can be shown by the oral representations" that the obligation to renew existed as long as the borrower remained solvent and remained in communication with the loan officer. The guaranty is ambiguous, Curry argues, because it indicates the parties agreed to a renewal, but the circumstances under which renewal would be resorted can only be determined through extrinsic evidence.

Both the promissory notes and the guaranty agreements provide that Kansas law governs. The construction of a written contract is a question of law.[69] Generally, if the language in a written contract "is clear and can be carried out as written, there is no room for rules of construction."[70] Where a contract is complete and unambiguous on its face, the court must determine the intent of the parties from the four corners of the document, without regard to extrinsic or parol evidence.[71] The provisions of a written contract must be interpreted as a whole and in harmony rather than in isolation.[72]

Whether a contract is ambiguous is a question of law for the court.[73] "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning."[74] "The court must not consider the disputed provision in isolation, but must

---

[69]*See, e.g.*, *Ponds ex rel. Poole v. Hertz Corp.*, 158 P.3d 369, 372 (Kan. Ct. App. 2007).

[70]*Gore v. Beren*, 867 P.2d 330, 336 (Kan. 1994) (quotation omitted).

[71]*Id.* (citing *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 887–88 (Kan. 1992)).

[72]*Decatur County Feed Yard, Inc. v. Fahey*, 974 P.2d 569, 574 (Kan. 1999) (citations omitted).

[73]*Simon*, 829 P.2d at 888.

[74]*Id.* (citing *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 810 P.2d 283, 284 (Kan. 1991)).

instead construe the term in light of the contract as a whole, such that if construction of the contract in its entirety removes any perceived ambiguity, no ambiguity exists."[75]  To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."[76]  The court is to use common sense and not strain to create an ambiguity in a written instrument when one does not exist.[77]  The fact that the parties do not agree over the meaning of terms does not in and of itself prove that the contract is ambiguous.[78]

The Court finds the guaranty agreements are not ambiguous.  Although Curry does not identify or explain the ambiguity with respect to the renewal language, the Court finds that the sections Curry cites concern whether Curry continues to be obligated for new loans once Curry has given written notice of the revocation of his personal guaranties.  These provisions do not contradict other provisions of the guaranties that state that renewal is at the sole discretion of the lender and that provide that the guarantor waives any right to require the lender to continue lending money or to extend other credit to the borrower.

Nor are the relevant portions of the underlying promissory notes ambiguous.  The MPC note provides:

> Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in one

---

[75]*Kay-Cee Enters. Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846 (D. Kan. 1998) (citing *Arnold v. S.J.L. of Kan. Corp.*, 749 P.2d 64 (Kan. 1991)).

[76]*Gore v. Beren*, 867 P.2d 330, 336 (Kan. 1994) (quotation omitted).

[77]*Eggleston v. State Farm Mut. Auto. Ins. Co.*, 906 P.2d 661, 662 (Kan. Ct. App. 1996), *rev. denied*, 261 Kan. 1086 (1997).

[78]*Ryco Packaging Corp. v. Chapelle Int'l, Ltd.*, 926 P.2d 669, 674 (Kan. Ct. App. 1996), *rev. denied*, 261 Kan. 1086 (1997).

payment of all outstanding principal plus all accrued unpaid
interest on September 1, 2008.[79]

Likewise, the GRV note provides:

Borrower will pay this loan in full immediately upon Lender's demand.
If no demand is made, Borrower will pay this loan in one principal
payment of $38,017.21, plus interest on June 1, 2008.[80]

There is no provision for automatic renewal or renewal upon request in either note. Instead, the notes provide that payment is due upon demand or, if no demand is made, upon a stated date. There is no provision obligating defendants to renew any of the loan obligations; instead, the notes state that defendants may "renew or extend (repeatedly and for any length of time) this loan."[81] Accordingly, extrinsic evidence of the alleged oral agreements regarding renewal is inadmissible.[82] Defendants are entitled to dismissal of Count IV for failure to state a claim.

The Court reaches a similar conclusion with respect to Curry's claim of mutual mistake. To prove mutual mistake concerning a written instrument, a party must show (1) an antecedent agreement that the written instrument undertakes to evidence; (2) that a mistake occurred in drafting the instrument and not the antecedent agreement it undertakes to evidence; and (3) when there is no fraud or inequitable conduct by a party, that the mistake is mutual.[83] Curry alleges that this limited exception for "mutual mistake" allows parol evidence as to the parties'

---

[79](Doc. 1, Ex. A at 1.)

[80]*Id.*, Ex. B. at 1.)

[81]*Id.* Ex. A at 2; Ex. B at 2.

[82]*Mangels v. Cornell*, 189 P.3d 573, 576 (Kan. Ct. App. 2008) (finding that when abiguity exists, parol evidence is admissible to ascertain the meaning of the words used in the written instrument).

[83]*Unified Gov't of Wyandotte County v. Trans World Transp. Servs.*, 227 P.3d 992, 995 (Kan. Ct. App. 2010).

understanding of the renewal conditions of the underlying obligations, which was not reflected in the guaranty agreements. Under Kansas law, extrinsic evidence of a mutual mistake is allowed if the alleged mistake touches upon the act of entering into the contract itself.[84] Having voluntarily entered into a contract, a party cannot vary its unambiguous terms by alleging a mistake as to those terms.[85]

In this case, Curry does not allege the guaranty agreements are fraudulent or not otherwise valid obligations, but instead alleges the existence of an separate oral agreement as to the circumstances of renewal of the underlying obligations. The terms and conditions of the underlying obligation need not be included in the guaranty agreement to make the guaranty agreement enforceable.[86] As such, Curry is seeking to vary the terms of a contract through the use of parol evidence, which is contrary to the law of Kansas.[87] Accordingly, Count V also fails to state a claim and is dismissed.

### E.  Attorneys' Fees

As Curry's claim of negligent misrepresentation survives the motion to dismiss, the Court finds that awarding attorneys' fees at this time would be premature. Defendants' request for attorneys' fees is denied without prejudice.

---

[84] *Flint Hills Props., L.P. v. Valley Bronze of Or., Inc.*, 490 F. Supp. 2d 1170, 1172 (D. Kan. 2007) (citing *Rosenbaum v. Tex. Energies*, 736 P.2d 888 (Kan. 1987)).

[85] *Id.*

[86] *Mies Wholesale Meats, Inc. v. Kan. City Meat & Poultry, Inc.*, 149 P.3d 894 (Table), 2007 WL 136022, at *3–*4 (Kan. Ct. App. Jan. 19, 2007).

[87] *See Pizza Mgmt., Inc., v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1158 (D. Kan. 1990) ("Reformation is an ancient remedy used to reframe a written contract to reflect accurately the real agreement between the contracting parties when, either through mutual mistake or unilateral mistake coupled with actual or equitable fraud by the other party, the writing does not embody the contract as actually made."); *see also Unified Gov't of Wyandotte County v. Trans World Transp. Servs.*, 227 P.3d 992, 995-96 (Kan. Ct. App. 2010).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss (Doc. 5) is granted in part and denied in part. Defendants' motion is **granted** as it relates to Curry's claims of breach of the duty of good faith and fair dealing, discharge, and mistake. Defendants' motion is **denied** as it relates to Curry's claim for negligent misrepresentation. Defendants' request for attorneys' fees is **denied without prejudice**.

**IT IS SO ORDERED.**

Dated: August 17, 2010

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE